Ruffin, Chief Justice.
 

 The plaintiffs cannot be relieved in this court upon the ground of the infancy of the wife w^en s^e executed th® bill of sale to Colson of the 6th of December, 1789, supposing her then to have the legal title
 
 *79
 
 to the slave, by the assent of the executors. If such were the cáse, the deed was void, as the act of an infant; and the remedy would be at law. The most favorable point of view in which the case can be placed for the plaintiffs, is that in which their counsel endeavoured to present it: as being a bill of a legatee of a specific chattel to redeem a mortgage made by the executors. The deed of the plaintiff Charity is then'to be regarded as a release of her right, as legatee, to redeem; and to be treated as inoperative, because she was under age when she gave it. Of her infancy at that time and at the time of her marriage, the evidence is satistactory ; and therefore, in our opinion, her rights are in no degree impaired by that instrument, as a conveyance or release simply.
 

 Laying that part of the transactions aside for the present, the case appears to be this: In the year 1784, the plaintiff’s mother and brother, who were the executors of her father’s will, conveyed, for what is. proved to have been a fair and full price, to Joseph Colson, a negro girl, which the father had given in his will to the plaintiff. One witness says, that by the contract between Colson and the executors the negro was redeemable ; while another, a brother of the plaintiff calls it a sale. If it was redeemable, there is nothing said by 'the first witness that enables us to say, whether the agreement for that purpose was contained in the deed of the executors, or was reserved by a separate instrument, or by parol. No security appears to have been taken by Colson for the money advanced by him; and he took immediatS possession. But in 1789, either because he held a mortgage only and wished to get the absolute title, or because it was thought the executors could, not convey a slave bequeathed, but that the legatee only could do so, the first conveyance, whatever its character was'was destroyed, and a bill of sale was made by the legatee, then supposed to be of full
 
 age,
 
 but in reality about twenty years old, and was attested by one of the executors. The testator died indebted, and both personal and real estate were sold under judgments outstanding at his death, and obtained afterwards. It might probably have been necessary for the executors either to sell or mortgage the negro for the payment of
 
 *80
 
 debts. But there is no positive proof of such necessity, nor any evidence of the actual application by the executors of money to that purpose. Nor, on the other hand, is there evidence that Colson knew, or had reason to believe that the money would not be or was not duly applied in a course of administration.^ About the period of the execution of the deed by the plaintiff her mother proposed to convey to her, by way of satisfaction, several articles of property; which the plaintiff declined accepting upon that footing, and expressed a wish to get her negro, as several witnesses on her part testify. After her marriage, however, the mother and brother, the executors, did convey to the husband land and a mare which he enjoyed and sold. These are distinctly proved to have been of greater value than the negro; and one witness says they were given in satisfaction for the negro, while another witness speaks to declarations to that effect by each of the plaintiffs.
 

 The bill was filed in 1826, against persons who had the slave and her issue under the will of Colson, who was then dead; as were also both the widow and son of the testator. The answers do not positively deny that the negro was at first mortgaged, and it is rather to be inferred the defendants believe she might have been, although they set up the transaction as a sale upon the gi-ounds that the possession accompanied it, and a full price was • paid. But they state their ignorance of the particular facts, and the impossibility of ascertaining them, by reason of the deaths of the persons just mentioned, and the remoteness of the transaction; and insist upon those circumstances, and the great lapse of time, as a bar to the relief.
 

 Upon the first blush of such a case as this, one feels that from its staleness, it is entitled to. no favour. It is now nearly fifty-four years since the supposed mortgage, which the plaintiffs|seek to redeem. To the filing of the bill, it was forty-four years; and thirty-seven years from the last transaction respecting the negro, that, namely, of the conveyance by the plaintiff to Colson. Every fact therefore, which it is necessary for the plaintiffs to establish, ought to be clearly and fully established by them; and every fair presumption made against them. Under the circumstances
 
 *81
 
 it might, therefore, be held, after the death of all the parties except the plaintiff, that the transaction was a sale, and a rightful sale by the executors; and also that the plaintiffs have received full satisfaction from the executors, to whom she looked, when she conveyed in completion of the title of the purchaser from them. But supposing the point ■ of satisfaction to remain in doubt, and although the executors conveyed with that view that the plaintiffs did not accept
 
 qua
 
 satisfaction; and further, that there was unquestionably a mortgage and not a sale to Colson; yet at this day, the plaintiffs cannot, we think, redeem upon their present bill. The executors .of the father are not made parties, nor is their assent to the plaintiffs directly established. The assent was inferred in argument from the length of time, and the attestation by the executor of the plaintiff’s bill of sale to Colson, But time can only operate in favour of a possession consistent with the fact presumed 'from it; and here the possession remained with the alienee of the executor. The attestation by the executor of the legatee’s conveyance may be evidence in most cases of an assent. But not in this case, in which the plaintiffs are obliged to suppose in their bill a fair mortgage made by the executors, to the very person to whom the plaintiff was conveying. It does not imply an intention that the legatee should defeat or redeem the mortgage ; for the instrument attested rather implies a renunciation by the legatee of the right to do either. With* out an assent of the executors, they are necessary parties for the protection of their own rights, and those of creditors The case is not one, in which the Court would be inclined to allow the case to stand over to make parties. But if an as sent were established, and the necessity of those parties were thereby dispensed with, the plaintiffs must' come into court for a redemption upon the right of the executors, who made the mortgage; and not upon any original right in the
 
 feme
 
 plaintiff; which her infancy and coverture would save from the effect of laches. If a mortgager assigns the equity of- redemption to an infant, or married woman, the mortgagee is not to be in a worse 'situation thereby; and the as-signee cannot redeem after his assignor - is barred. The plaintiffs seek to redeem themselves, instead of the execu*
 
 *82
 
 tors. But they have brought their suit for that purpose long after one by the executors themselves could be. entertained. Collusion between Colson and the executors is charged, as well as fraud and imposition by all of them on the plaintiff in obtaining a deed from her. If those charges had been sustained by proof, the Court might have been more ready to assist the plaintiffs to redress against both. But these charges have ho shadow of foundation; and the application, in its only shape, is a naked one for redemption by the legatee of a mortgage fairly made by the executors, where the mortgagee has been in possession, and no notice taken of the mortgage for upwards of forty years. The time is a full answer to the executor in such a case; and must be so also to the legatee, with or without the executors being before the Court; and this is especially so, where the executors never intended to transfer their title to the legatee, but in fair probability, at the least, otherwise made the legacy good her.' The bill must therefore be dismissed with costs.
 

 
 *81
 
 if chattels bequStS be mort-the execu-|f¿esseajya party toa legatee for |^erap'
 

 
 *82
 
 Per Curiam. ' Bill dismissed.